UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA DEE SHOAF,<br><br>Plaintiff<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendants. | Case No. 5:15-cv-938 (GJS)<br><br>**MEMORANDUM, OPINION, AND ORDER** |

## INTRODUCTION

In this social security disability case, Shoaf claims that the Commissioner failed to appropriately analyze two doctors' opinions. For the following reasons, this Court affirms the Commissioner's decision.

## PROCEDURAL HISTORY

Shoaf submitted an application for supplemental security income on December 21, 2011. [Admin. Rec. ("AR") 148-53, 173.] Shoaf claimed that she suffered from major depressive disorder (MDD), recurrent with psychotic features, history of polysubstance dependence, hypertension, right knee pain, and nonsevere headaches, which together rendered her disabled as of October 15, 2010. [*See* AR 13, 15.] After denials of benefits on initial review and on reconsideration, an administrative

law judge ("ALJ") held a hearing on November 21, 2013. [AR 31-49.] On February 28, 2014, the ALJ issued a written decision denying Shoaf's request for benefits. [AR 13-25.] Shoaf appealed to the Appeals Council, which denied the request for review on March 12, 2015. [AR 1-4.] This case followed.

## SUMMARY OF ADMINISTRATIVE DECISION

Applying the five-step sequential evaluation process, the ALJ found that Shoaf was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).[1] At step one, the ALJ concluded that Shoaf "has not engaged in substantial gainful activity since December 21, 2011, the application date." [AR 15.] At step two, the ALJ found that Shoaf suffered from "the following severe impairments: major depressive disorder (MDD), recurrent with psychotic features; and history of polysubstance dependence." [*Id.*] Next, the ALJ determined that Shoaf did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." [AR 16.]

The ALJ then developed the following residual functional capacity (RFC) for Shoaf:

> [A] full range of work at all exertional levels but with the following nonexertional limitations: she can understand

---

[1] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

and remember simple routine tasks; she can carry our short and simple instructions; she can make judgments and decisions consistent with simple routine duties; she is precluded from doing work with high production quotas or rapid assembly line work; and she should have minimal contact with the public and occasional contact with co-workers.

[AR 17.] Applying this RFC, the ALJ found that Shoaf had no past relevant work but determined that based on her age (50 years old), completion of limited education, literacy, and English speaking skills, she could perform the representative occupations of hand packager and small products assembler I. [AR 23-24.]

## GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

Even if Shoaf shows the ALJ committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). A court may "affirm[] under the rubric of harmless error where the mistake [is] nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050,

1055 (9th Cir. 2006). "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and … 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (quoting *Stout*, 454 F.3d at 1055-56).

## DISCUSSION

### I. The Commissioner Properly Evaluated the Opinions of Treating Medical Practicioners Julie Myers and Than Myint.

From Shoaf's confusing briefing about the nature of the alleged error, the Court discerns the following two claims: (1) that the ALJ erred when evaluating Dr. Myers's August 2012 opinion, and (2) that the Commissioner erred by failing to make specific findings about Dr. Myint's November 20, 2013 Mental Residual Functional Capacity Assessment. The Court discusses each.

### A. Dr. Myint's Opinion

#### 1. Summary of Dr. Myint's Opinion

Because Shoaf focuses exclusively on the November 20, 2013 Mental Residual Functional Capacity Assessment form Shoaf's counsel submitted after the ALJ issued her opinion without reference to Myint's treatment notes,[2] so does this Court.

---

[2] Myint's treatment notes, which contain opinions within the meaning of 20 C.F.R. § 404.1527(a), were already contained in the administrative record before the ALJ, unlike Myint's Mental Residual Functional Capacity Assessment form. [*See* AR 407-18]; *see also* § 404.1527(a) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

[AR 448-51; AR 451 (reflecting date).] According to the form, Myint had treated Shoaf monthly from September 24, 2012 to September 24, 2013. [AR 448.] The assessment gives a diagnosis of severe, recurrent major depression with psychosis, and lists her prognosis as "guarded." [*Id.*] Myint concluded that Shoaf had a Global Assessment of Functioning (GAF) score of 40 (and a highest score of 40 within the preceeding year), and checked either "marked" or "extreme" for every category the form lists in areas of understanding, memory, concentration, persistence, social interaction, and adaptation. [AR 448-50.] Myint checked that the impairment would not "substantially interfere with … her ability to work on a regular and sustained basis at least 20% of the time," but contradictorily, that Shoaf could not "work on a regular and sustained basis in light of … her mental impairment." [AR 451.][3] Myint provided no explanation for his conclusion that Shoaf could not work on a regular and sustained basis. [*Id.*]

### 2. The Appeals Council Opinion

Shoaf incorrectly claims that "neither the ALJ nor the Appeals Council accepted or rejected Dr. Myint's opinion, noted the weight he afforded to this opinion, nor provided specific and legitimate reasons supported by substantial evidence for rejecting plaintiff's treating physician's opinion." [Dkt. 16 at 4.] Rather, after Shoaf's counsel submitted the additional opinion to the Appeals Council on March 12, 2015, it became part of the administrative record. [AR 6.] Thereafter, in the course of denying review, the Appeals Council explained that it "considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of

---

[3] As a general note, question number 4 on the assessment form—"Would your patient's impairment substantially interfere with his or her ability to work on a regular and sustained basis at least 20% of the time?"—is ambiguous because it is not clear whether the phrase "at least 20% of the time" is meant to modify "substantially interfere" or "ability to work on a regular sustained basis." The Court's guess is the former, as the latter would permit an impairment to interfere 80% of the time but still result in a positive answer.

5

evidence of record"—a record that now included Myint's report. [AR 2.] Ultimately, it determined the new information did not provide a basis for changing the ALJ's decision. [*Id.*]

### 3. Analysis

At the outset, the Commissioner is correct that this Court "do[es] not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir.2011)). Accordingly, Shoaf's contention that the Appeals Council erred by not providing "specific and legitimate" reasons for rejecting Dr. Myint's opinion is foreclosed. [Dkt. 16 at 4.]; *e.g.*, *Boyd v. Colvin*, 524 Fed. App'x 334, 336 (9th Cir. 2013) ("Moreover, 'in rejecting [new] evidence, the Appeals Council is not required to make any particular evidentiary finding.'" (quoting *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996) (superseded by statute)); *Wilder v. Comm'r of Soc. Sec. Admin.*, 545 Fed. App'x 638, 640-41 (9th Cir. 2013).[4] And, of course, the ALJ could not have erred for not provide specific and legitimate reasons for rejecting an opinion she never had before her.

Nonetheless, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes*, 682 F.3d at 1163. Accordingly, Shoaf's attack is really whether, accounting for Dr. Myint's opinion,

---

[4] A rule requiring the Appeals Council to give "specific and legitimate" reasons why it rejected a newly submitted treating physician opinion would effectively require the Appeals Council to **grant** review each time, just to explain why it would not need to grant review. The regulations permit otherwise. *See* 20 C.F.R. § 404.970(b).

6

substantial evidence supports the ALJ's mental RFC determination. *See, e.g.*, *Boyd*, 524 Fed. App'x at 336 (analyzing new evidence to determine whether it undermined the substantial evidence).[5]

    Dr. Myint's unexplained, unsupported four-page multiple choice form does not convince this Court that substantial evidence did not support the ALJ's findings. [*See* AR 448-51.] The Ninth Circuit has long held that "the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)); *see also Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings." (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)) (emphasis and citations omitted)). This rule is particularly applicable, where, as here, the physician's opinion takes the form of a "yes-or-no" or "check-the-box" list. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (noting an "ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions" (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996))); *e.g.*, *Batson*, 359 F.3d at 1195; *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001).[6]

---

[5] Shoaf's briefing is unclear as to the precise error she assigns to the Commissioner's evaluation of Dr. Myint's form. Although one could read Shoaf's brief as merely an attack on the procedural failure to give "specific and legitimate" reasons for rejecting Myint's opinion, giving Shoaf the benefit of the doubt, the Court understands Shoaf to attack the ultimate conclusion as lacking substantial evidence because it fails to account for Myint's 2013 opinion.

[6] In *Garrison v. Colvin*, the Ninth Circuit expressed that where answers to questionnaire "were based on significant experience with [the claimant] and supported by numerous records, … [they] were therefore entitled to weight that an

Myint's "opinion" expressed in the assessment form is inconsistent with his own progress notes. For example, the assessment notes that Shoaf's highest GAF score within the past year was a 40. [AR 448.] But Myint gave Shoaf a GAF score of 50 on November 20, 2012. [AR 415.] At that same meeting, Myint noted thought process "within normal limits" [AR 416], though his later assessment noted "marked" or "extreme" limitations in **every** mental capacity assessment [AR 449-51.] And after an appointment in June 2013, as the ALJ explained, Myint noted that Shoaf said she was "feeling alright" and that she was improving with psychological medications. [AR 21 (citing AR 408).] Those statements are inconsistent with the extreme and marked limitations Myint notes in November, and absent further elaboration, an ALJ would likely credit them over the checkbox assessment.

These discrepancies are merely exemplary, and in large part, unnecessary given the Ninth Circuit's clear statement in *Molina* that an ALJ may dismiss unexplained check-off reports. Here, Myint's opinion provides no "explanation of the basis of [its] conclusions," and accordingly, the ALJ likely would have discounted it, given her findings that Dr. Myint's November 2012 opinion "reports many normal findings except paranoid delusions and auditory hallucinations." [AR 21]; *see Molina*, 674 F.3d at 1111-12.

Because the ALJ could reasonably have rejected Myint's unsupported opinion, it does not undermine the substantial evidence supporting the ALJ's conclusion.

---

otherwise unsupported and unexplained check-box form would not merit[.]" 759 F.3d 995, 1013 (9th Cir. 2014). The *Garrison* rule does not apply here, however, because the questionnaire answers do not appear to be **supported by numerous records**. Rather, as the Court explained, Myint's own records conflict with his answers in the assessment form.

### A. Dr. Myers's Opinion

#### 1. Summary of Dr. Myers's Treatment

Dr. Julie Myers, a clinical therapist at Upland Community Counseling, appears to have seen Shoaf twice: on August 20 and September 19, 2012. [AR 419-25.] On August 20, Myers noted in an intake assessment that Shoaf presented with depression, which manifested in sleep problems, loss of appetite, no motivation, poor concentration, flat affect, and being emotionally overwhelmed. [AR 424.] Under the section for "Occupation," instead of checking the box for "No impairment reported," Myers noted that "current [symptoms] impair ability to work." [*Id.*][7] Myers also listed interpersonal impairments, namely that Shoaf has adult paranoia, "v.h. [visual hallucinations] of people in trees," and was isolated and would not go outside alone. [*Id.*] In her assessment of risk, Myers found no danger to self or others, no suicidal or homicidal inclinations, and no grave disability. [*Id.*] Ultimately, Myers diagnosed Shoaf with chronic PTSD and depression. [AR 425.]

On September 19, Myers performed another assessment. The second assessment largely reported the same symptoms and history as the August 20 evaluation. [AR 420-22.] Relevant here, Myers's assessment continued to state that Shoaf had symptoms that impaired her ability to work, but also that she suffered from no grave disability. [AR 420.] Myers also observed that Shoaf suffered from paranoia, had to be pressured to speak at times, had average intellectual functioning, racing and depressed thought processes, and distracted cognition and attention. [AR 423.] Myers also reported that Shoaf had visual and audial hallucinations. [*Id.*] In other respects, however, Myers found Shoaf had normal mental functioning, such as "fair to good" insight and judgment. [*Id.*]

---

[7] It is not clear to the Court whether this was a diagnostic determination or a description of a self-report.

Myers diagnosed Shoaf with psychotic disorder, chronic PTSD, and polysubstance dependence in sustained full remission. [AR 419.] She also noted a current GAF score of 38, and reflected a past GAF of 48. [*Id.*]

### 2. Analysis

The ALJ gave three reasons for rejecting Dr. Myers's August 2012 opinion that Shoaf's then-current symptoms impaired her ability to work: (1) that "the finding of disabled is one reserved for the Commissioner"; (2) the "author is not familiar with the Social Security Administration's precise disability guidelines, as evidenced by the opinion"; and (3) that the opinion deserved "little weight because it is not consistent with the medical evidence record as a whole." [AR 22.]

Because other medical evidence contradicts Dr. Myers's opinion, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence to reject it. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *see Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orn*, 495 F.3d at 633).

First, the ALJ's explanation that the finding of "disabled" is reserved to the Commissioner is not itself a reason to reject Dr. Myers's opinion. It is true that the regulations do not require the ALJ to accept a physician's conclusion that a particular claimant is disabled. *See* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Nonetheless, at least in the Ninth Circuit, "reasons [required] for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also* Soc. Sec. R. ("SSR") 96-5p (explaining that opinions on disability "must not be disregarded").

Accordingly, "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Id.* Therefore, although the ALJ is not bound by Dr. Myer's opinion on disability, she still must put forth a separate specific and legitimate reason to reject it.

The second reason—that Dr. Myers was "not familiar with the Social Security Administration's precise disability guidelines"—simply recasts the argument that the Commissioner makes the final interpretation of disability.

The ALJ's third reason—that the record as a whole contradicts the opinion—is certainly legitimate. The question is whether it is specific. "Although we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' we still demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, No. 13-15213, -- F.3d --, 2015 WL 6684997, at *4 (9th Cir. Nov. 3, 2015) (internal citation omitted). Accordingly, "an ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than … or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012.

Here, the ALJ explained that she viewed Myers's opinion as inconsistent with the record because the evidence—which the ALJ discussed at length—reflected "infrequent, conservative routine treatment with visits every other month, beginning in August 2012, and medications such as Prozac." [AR 22.] Shoaf concedes here that the "decision of the Administrative Law Judge fairly and accurately summarizes the medical evidence contained in the Administrative Record with the exception of that disputed in the following issues." [Dkt. 16 at 2.][8] That concession means that

---

[8] Shoaf's brief does not challenge the opinions provided by the other medical experts, but rather attacks the rejection of Dr. Myint's and Dr. Myers's opinions.

11

Shoaf **does not** dispute (and from this Court's review, could not meaningfully dispute) that the record supports the ALJ's detailed summary of Shoaf's medical treatment and analysis of the medical opinions of Ernest A. Bagner, M.D., Cynthia Kampschafer, Psy.D., and R. Singh, M.D. [*See* AR 18-22.] Although the ALJ might have done more to provide her reasoning, in light of the statement quoted above and in the context of the entire ALJ opinion, the Court finds that the ALJ's reason for rejecting Myers's opinion was specific and legitimate.

The Court also rejects Shoaf's argument that the ALJ had a duty to recontact Dr. Myers. Shoaf relies principally on the language of Social Security Ruling 96-5p, which states:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

The ALJ never stated that Dr. Myers's opinion was ambiguous or insufficient to make a disability determination; rather, the ALJ rejected it because it was contradicted by the record evidence. The Ninth Circuit has held that where "the doctors' reports were neither ambiguous nor insufficient to make a disability determination," "[t]he ALJ had no duty to recontact the treating physicians." *Thornsberry v. Colvin*, 552 Fed. App'x 691, 692 (9th Cir. 2014) (citing *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir.2005)). So too here.

//
//
//
//
//
//

**CONCLUSION**

For all of the foregoing reasons, **IT IS ORDERED** that judgment be entered AFFIRMING the decision of the Commissioner of Social Security and DISMISSING this action with prejudice.

**IT IS HEREBY ORDERED.**

DATED: December 23, 2015

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE